**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.  1:14 CV 23** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **vs.** | ) | <u>**ORDER**</u> |
| | ) | |
| **$506,069.09 Seized from First Merit Bank,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Before the Court are the following pending motions in this civil *in rem* forfeiture case:

1.      Erum Zaidi's Motion to Dismiss (**Doc #: 42**);

2.      Claimants' Motion for Transfer of Seized Assets to Pay Taxes (**Doc #: 44**); and

3.      Claimants' Motion to Strike Government's Sur-Reply or, in the Alternative, for Leave to
Respond Instanter (**Doc #: 51**).

For the reasons to follow, the Court **DENIES** the Motion to Dismiss (**Doc #: 42**);

**DENIES** the Motion for Transfer (**Doc #: 44**), and **DENIES AS MOOT** the Motion to Strike

(**Doc #: 51**).

## I.      Background

On January 6, 2014, the Government filed this civil *in rem* forfeiture action naming

fourteen defendant properties consisting primarily of bank and investment accounts with an

approximate aggregate value of $4.8 million, together with 139 pieces of jewelry valued in

excess of $90,000.  The Defendant accounts are in the names of Syed J. Ahktar-Zaidi, his wife

Erum Zaidi, and his company Pain Management of Northern Ohio (and/or a combination of those names).  The Verified Complaint alleges that Syed Zaidi, a medical doctor who operated a pain management clinic in Solon, Ohio, prescribed controlled substances (specifically, Schedule II and Schedule III painkillers) to his patients outside the scope of his professional practice and without a legitimate purpose, in violation of 21 U.S.C. § 841.[1]  Moreover, he deposited the proceeds of his alleged illicit drug-trafficking activity in various bank accounts in the names of himself, his wife and his corporation, then funneled those proceeds into various investment accounts which ultimately paid him dividends; thus successfully laundering his tainted proceeds in violation of 18 U.S.C. §§ 1956 and 1957.

On February 7, 2014, Dr. Zaidi, Erum Zaidi and Pain Management of Northern Ohio (hereafter "PMNO"), represented by counsel, filed Verified Claims asserting their interests in the defendant assets (Doc ##: 12, 13, 14), and a single answer denying the allegations in the complaint and asserting affirmative defenses (Doc #: 18).

On February 10, 2014, the Court issued a Case Management Conference (CMC) Scheduling Order scheduling a CMC on March 12, 2014.  (Doc #: 16.)  On March 5, 2014, counsel for the Claimants filed a Motion to Excuse their appearance at the CMC due to "undue hardship," claiming that the Zaidis were forced to move to Pakistan where they are residing with a relative, due to the freeze on all their assets.  (Id.)  Before the Government had an opportunity

---

[1]Drugs are classified into five schedules depending upon the drug's acceptable medical use as well as the drug's potential for abuse and dependency.  Schedule I drugs (e.g., heroin and LSD) are defined as drugs with no currently accepted medical use and the highest potential for abuse. They are considered the most dangerous drugs of all the drug schedules with severe psychological or physical dependence potential.  Schedule II drugs (e.g., Oxycontin, Percocet) have accepted medical use but the next highest potential for abuse and dependency.  Schedule III drugs (e.g., Vicodin) have accepted medical use with abuse and dependency potential, but slightly less than Schedule II drugs.  And so on.  See http://www.dea.gov/druginfo/ds.shtml

to oppose the motion, the Court granted it.  (Non-document entry of 3/6/14.)  The Government

then filed a Motion asking the Court to reconsider its ruling.  (Doc #: 20.)  The Government

argued that any "hardship" was created by the Zaidis moving to Pakistan outside the jurisdiction

of the Court and in the midst of a criminal investigation related to this civil case.  (Id.)  The

Court thereafter held a teleconference with counsel at which time counsel agreed to stay the case

until July 10, 2014 based on the ongoing criminal investigation related, again, to this civil case.

(Minutes of 3/10/14.)

On July 8, 2014, the parties filed a Joint Statement regarding the status of this case

wherein they agreed to a continuation of the stay for 90 days "or until an indictment is returned

in the related criminal investigation, whichever occurs first."  (Doc #: 37.)

On August 27, 2014, the Government filed an Indictment against Dr. Zaidi

charging him with one count of conspiring to distribute controlled substances, 36 counts of

distribution of controlled substances, one count of health care fraud, eight counts of money

laundering, and a forfeiture specification naming the same fourteen defendant properties targeted

in this civil forfeiture case.

On September 4, 2014, Dr. Zaidi failed to appear at his scheduled arraignment, and is

currently deemed a fugitive from justice.

On October 24, 2014, Erum Zaidi filed the three pending motions.  She asks the Court to

dismiss the forfeiture complaint to the extent that is freezes assets listed in her name.  She also

asks the Court to transfer a portion of the seized assets to pay the Zaidi's personal and business

income taxes due for 2013, to pay an outstanding tax obligation from 2012, and to pay their

accountants for services in preparing their tax returns.

-3-

## II.    Motion to Dismiss

### A.

The provisions governing the sufficiency of civil forfeiture complaints are set forth at 18

U.S.C. § 983(a)(3)(D), and Rules G(8)(b)(ii) and G(2)(f) of the Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules").

Section 983(a)(3)(D) provides:

(D)   No complaint may be dismissed on the ground that the Government did not
have adequate evidence at the time the complaint was filed to establish the
forfeitability of the property.

The language of § 983(a)(3)(D) was incorporated into Supplemental Rule G(8)(b)(ii),

which provides:

(ii)   In an action governed by 18 U.S.C. § 983(a)(3)(D) the complaint may
not be dismissed on the ground that the government did not have adequate
evidence at the time the complaint was filed to establish the forfeitability of the
property.  The sufficiency of the complaint is governed by Rule G(2).

Supplemental Rule G(2)(f) provides:

(2)   Complaint.  The complaint must :
*          *          *
(f)   state sufficiently detailed facts to support *a reasonable belief* that the
government will be able to meet its burden of proof at trial.

Supplemental Rule G(2)(f) (emphasis added).

As it relates to this case, the Controlled Substances Act ("the Act") defines a "controlled

substance" as a drug or other substance, . . . included in schedule I, II, III, IV, or V of part B of

this subchapter.  *United States v. Hazelwood*, No. 1:10 CR , 2011 WL 2565294, at *3 (N.D. Ohio

Jun. 27, 2011) (citing 21 U.S.C. § 802(6)).  21 U.S.C. § 841 criminalizes the distribution of

"controlled substances."  *Id*.  The Act contains an exception to this broad prohibition against the

-4-

distribution of controlled substances for prescriptions written by a practitioner licensed by law to administer such drugs. *Id.* (citing 21 U.S.C. §§ 353(b), 802(21), 829(b)). Pursuant to 21 C.F.R. § 1306(a), a controlled substance may only be prescribed "for a legitimate purpose by an individual practitioner acting in the usual course of his professional practice." *Id; see also United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010). Conversely, any distribution of a controlled substance pursuant to a prescription that does not meet this standard constitutes a criminal violation of 21 U.S.C. § 841. *Id.*

For the reasons to follow, the Court concludes that the factual allegations in the Complaint support a reasonable belief the Government will be able to meet its burden of proof at trial.

**B.**

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept as true plaintiff's factual allegations, it must not accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Erum Zaidi's primary contention is that the complaint against her "is replete with legal conclusions couched as factual allegations." (Doc #: 42, at 5.) The Court agrees that the complaint contains legal conclusions (e.g., "Zaidi laundered the receipts from the illegal distribution of prescription drugs," "Zaidi then laundered those funds in and out of the remaining Defendant accounts"). Legal conclusions aside, the Court finds that the complaint alleges sufficient factual information to bring the proceeds and other assets derived from Dr. Zaidi's

-5-

alleged illicit drug-trafficking activity within the federal civil forfeiture statutes – regardless of whose names those accounts are listed in.

The complaint alleges that Dr. Zaidi practiced medicine and operated the PMNO which specialized in Physical Medicine & Rehabilitation and Pain Medicine.  (Comp. ¶5.)  According to the Ohio Pharmacy Board's database, during a two-year period of time, Dr. Zaidi wrote prescriptions for well over 1 million dosage units of oxycodone, 200,000 dosage units of morphine products, and 150,000 dosage units of oxymorphone products – all of which are highly abused and physically and mentally addictive controlled substances.  (Id. ¶ 12.)  As to his Medicare patients, these numbers represented an extremely high percentage of overall prescriptions.  (Id. ¶ 15.)  His DEA registration, which authorizes him to prescribe these controlled substances, has been suspended.  (Id. ¶ 5.)

In 2012 and 2013, three undercover law enforcement officers presented themselves as patients to Dr. Zaidi at PMNO.  (Comp. ¶ 8.)  They reported that Dr. Zaidi performed, at best, a cursory examination before prescribing Schedule II and III pain medications to treat their purported conditions.  (Id.)  During subsequent visits, the officers requested higher dosages of previously prescribed drugs and more habit-forming drugs.  (Comp. ¶ 9.)  Dr. Zaidi obliged them by prescribing increasingly more habit-forming drugs *without conducting a medical examination*.  (Id. (emphasis added).)  Each undercover officer was seen by Dr. Zaidi on five or six occasions between September 2012 and May 2013.  (Id. ¶ 10.)  They reported that Dr. Zaidi spent, on average, no more than three minutes with each of them per visit, *and he never required them to obtain MRIs, x-rays, or ordered physical therapy.*  (Id. (emphasis added).)

To the first officer who complained of a nagging stiffness in the back during a four-month period, Dr. Zaidi prescribed 308 tablets of Percocet, 84 tablets of 10-mg Oxycontin, and 126 tablets of 15-mg Oxycontin.  (Comp. ¶ 10.)  To the second officer who complained of a nagging stiffness in the back during a six-month period, Dr. Zaidi prescribed 434 tablets of Percocet, 84 tablets of 10-mg Oxycontin and 84 tablets of 15-mg Oxycontin.  (Id.)  To the third officer who complaint of a dull ache in the left knee during a four-month period, Dr. Zaidi prescribed 224 tablets of Vicodin and 224 tablets of Percocet.  (Id.)  He did so despite the fact that the none of the officers reported more than a "four" (and as low as a "two") on a pain scale of one to ten, with ten being the worst pain.  (Id.)  Dr. Zaidi charged each of the undercover officers $300 for their initial visits and $95 for the subsequent visits, and all payments to Dr. Zaidi were made in cash.  (Id.)  Business records revealed that it was not uncommon for Dr. Zaidi to see 60 to 80 patients per 7.5 hour work day, and on one day he saw 92 patients.  (Id. ¶ 11.)

Dr. Zaidi's Medicare Part D prescription drug claims were reviewed by the Government, and establish the following for the period between January of 2008 through January of 2012: A total of 16,734 prescription drug event (PDE) records revealed that 86.3% of the PDEs were written for analgesic narcotics (painkillers) and prescribed to 95.1% of his patients.  The PDEs establish that 93% of his analgesic narcotics records are for Schedule II controlled substances.

Based on the foregoing facts uncovered during the investigation, the Government believed that Dr. Zaidi's prescription of controlled substances to his patients (to wit, Oxycodone, Morphine, Oxymorphone and Hydrocodone) did not comply with accepted and prevailing

standards of medical care, were outside the scope of his professional medical practice, and violated state and federal laws, including  21 U.S.C. § 841.

The Government's investigation revealed that proceeds of Dr. Zaidi's alleged illicit drug-trafficking activity were deposited in numerous First Merit and PNC Bank accounts in the names of Dr. Zaidi, Erum Zaidi, PMNO and combinations of names thereof.  They were then funneled into Ameriprise investment portfolios and/or Genworth financial retirement accounts in the names Dr. Zaidi, Erum Zaidi, PMNO and combinations thereof, where they accrued value based upon market performance, and were then redeemed as dividends.  (Comp. ¶ 19.)  Between 2010 and 2013, the proceeds circulating through the business accounts at First Merit Bank and PNC Bank exceeded $9.8 million in deposits and $9.5 million in withdrawals.  (Id. ¶ 21.)  In addition to being proceeds of Dr. Zaidi's alleged illicit drug-trafficking activity, the Government observed that the pattern of activity among the various accounts was a traditional method of laundering criminal proceeds, in violation of 18 U.S.C. §§ 1956 and 1957.  (Id. ¶ 18.)

A search of the Dr. Zaidi's personal residence, pursuant to a warrant, revealed over $90,000 worth of jewelry that the Zaidis purchased during a trip to Pakistan in June or July 2013.  (Comp. ¶ 22-23.)  The jewelry was purchased with the proceeds generated from Dr. Zaidi's alleged drug-trafficking activity.  (Id.)

In summary, the complaint alleges that Dr. Zaidi prescribed highly abused and addictive painkillers to undercover officers with unimpressive pain levels, with little examination, without ordering x-rays or MRIs to ascertain the source of their purported pain, and without ordering physical therapy or other types of therapy short of painkillers.  The complaint alleges that Dr. Zaidi continued to prescribe painkillers for the officers for months after their initial visits

-8-

without further medical investigation, increasing the strength of previously prescribed painkillers and prescribing more addictive painkillers.  In addition to the reports from the undercover officers' personal investigation of Dr. Zaidi's practice and the suspension of his DEA registration, the Government's investigation included findings from the Ohio Automated Reporting RX System of the Ohio Pharmacy Board's database, a review of Dr. Zaidi's Medicare Part D prescription drug claims, and a financial analysis following the proceeds of Dr. Zaidi's practice.  The Court concludes that, at the time it was filed, the complaint states sufficiently detailed facts to support a reasonable belief that the Government would meet its burden at trial.  Supplemental Rule G(2)(f).

Moreover, "the Government is not required to allege in the complaint all of the facts and evidence at its disposal.  It is sufficient for the Government to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation."  *United States v. $22,173.00 in United States Currency*, 716 F.supp.2d 245, 248 (S.D.N.Y. 2010).  While this civil case was pending, Dr. Zaidi moved his family to Pakistan, outside the Court's jurisdiction and in the midst of a federal criminal investigation.  A federal grand jury has now returned an indictment against Dr. Zaidi charging him with one count of conspiring to distribute controlled substances, 36 counts of distribution of controlled substances, one count of health care fraud, eight counts of money laundering, and a forfeiture specification naming the same 14 defendant properties asserted in this civil forfeiture case, including assets identified by Claimant Erum Zaidi in her motion to dismiss.  An indictment returned by a duly constituted grand jury establishes the existence of probable cause.  *United States v. Machine Gun 30.06, etc.*, 904 F.Supp. 622 (N.D. Ohio 1995) (citing *Friedman v. United*

*States*, 927 F.2d 259, 262 (6th Cir. 1991)).  Probable cause is defined as "reasonable grounds for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion."  *Id*. (citing *United States v. $22,287*, 709 F.2d 442, 446-47 (6th Cir. 1983), in turn quoting *United States v. One Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir. 1980)).

   Although Erum Zaidi *purports* to understand that this is an *in rem* proceeding, she argues that the Court should order release of her assets because she has not been charged with a crime. It is not necessary for Erum Zaidi to be charged with a crime in order to subject to forfeiture assets in her name which constitute the proceeds of illegal drug activity, and over which her husband had control.  As Ms. Zaidi acknowledges, "money traceable to transactions involving illegal drugs may be seized by the government."  (Doc #: 42 at 8 (citing *United States v. $11,331.00*, 482 F.Supp.2d 873, 878 (E.D. Mich. 2007), in turn citing 21 U.S.C. § 881(a)(6)). As well, "[t]he government must show 'that the property is substantially connected to criminal activity."  (Id.)  The civil forfeiture provision authorizes the forfeiture of property that "is derived from proceeds traceable to" a qualifying criminal violation.  18 U.S.C. § 981(a)(1)(C). *Kaley v. United States*, 134 S.Ct. 1090, 1106 (2014).  Unlawful trafficking in controlled substances by a physician constitutes a qualifying criminal violation under the civil forfeiture statute.

   Ms. Zaidi also argues that her assets should be released because they are "innocent funds."  (Doc #: 42, at 8-10.)   She acknowledges, however, that "[w]hen illegitimate funds are commingled with legitimate money both are subject to forfeiture if the legitimate money was involved in the offense." (Id. (citations omitted).)  The complaint alleges that a financial analysis found that Dr. Zaidi engaged in a complex series of financial transactions using not only his own

accounts, but those of his wife and company, to commingle the tainted proceeds with the untainted proceeds, and successfully laundered the tainted proceeds.

Finally, Erum Zaidi points to three cases to support her position that the Government's investigation, standing alone, does not provide sufficient factual material to support the complaint.  (See Doc #: 48, at 4.)  Suffice it to say that all three cited cases are in no way factually analogous to the facts asserted in this case.

For all these reasons, the Court **DENIES** Erum Zaidi's Motion to Dismiss (**Doc #: 42**.)

### III.    Motion for Transfer of Seized Assets to Pay Taxes

All three Claimants ask the Court for an order directing the transfer of a fixed portion of the seized assets to pay Claimants' personal and business income taxes that have now become due for 2013, to satisfy an outstanding tax obligation from 2012, and to pay their tax accountants.

### A.

In civil *in rem* forfeiture actions, 18 U.S.C. § 983(f) provides the exclusive remedy for seeking the release of property pending trial on the basis of hardship.  *United States v. Contents of Accounts (Chavez)*, 629 F.3d 601, 608 (6th Cir. 2011); *United States v. 8 Gilcreast Lane*, 587 F.Supp.2d 133, 140 (D.D.C. 2008).  In seeking the release of seized property to avoid hardship, the claimant must demonstrate that all the prerequisites of § 983(f)(1) have been met.

Pursuant to 18 U.S.C. § 983(f)(1):

A claimant under subsection (a) is entitled to immediate release of seized property if –

(A)    the claimant has a possessory interest in the property;

(B)    the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;

-11-

(C)   the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;

(D)   the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and

(E)   none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1).  Paragraph (8) provides:

This subsection shall not apply if the seized property –

(A)   is contraband, currency, or other monetary instrument, or electronic funds *unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized*;

(B)   is to be used as evidence of a violation of the law;

(C)   by reason of design or other characteristic, is particularly suited for use in illegal activities; or

(D)   is likely to be used to commit additional criminal acts if returned to the claimant.

18 U.S.C. § 983(8) (emphasis added).

Dr. Zaidi and his wife cannot claim sufficient ties to the community since they have put their Solon residence on the market and are actively avoiding the practical reach of the Court's civil and criminal jurisdiction by remaining in Pakistan.  18 U.S.C. § 983(f)(1)(B).  Nor can the Zaidis demonstrate that the property will be available at the time of trial since they seek to transfer the seized funds to pay their taxes and accountants.  Id.  Perhaps they can pay their taxes and accountants from the proceeds of their residence, which has not been seized.  Section 983(f)(8)(A) excludes from release seized currency and other monetary instruments unless they

-12-

are the assets of a legitimate business.  At this point, it cannot be said that PMNO was a legitimate business.

Under the Fugitive Disentitlement statute, 28 U.S.C. § 2466, a judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action . . . after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution." 28 U.S.C. § 2284(a)(1).  This applies to persons are not confined or held in custody in any other jurisdiction for commission of a crime and who purposely leave the jurisdiction of the United States or who decline to reenter the United States to submit to its jurisdiction.  18 U.S.C. §§ 2284 (a)(1)(A)-(B).   Dr. Zaidi is presently the defendant in a criminal case entitled *United States v. Syed Jawed Akhtar-Zaidi*, Case No. 1:14 CR 299.  A warrant for Dr. Zaidi's arrest has been issued in the criminal case since he failed to appear for his scheduled arraignment.  He is on notice that he is a fugitive from justice.   Accordingly, Dr. Zaidi cannot avail himself of access to the Court in this civil action to seek the transfer of seized assets as long as he remains a fugitive from justice.

For all these reasons, the Motion to Transfer Seized Assets to Pay Taxes (**Doc #: 44**) is **DENIED**.

(Continued on next page.)

-13-

### IV.    Motion to Strike

Because the Court ruled on the Motion to Transfer Seized Assets to Pay Taxes without reviewing the Surreply filed by the Government, the Court **DENIES AS MOOT** the Claimants' Motion to Strike (**Doc #: 51**).

### V.    Conclusion

For the foregoing reasons, the Court **DENIES** the Motion to Dismiss (**Doc #: 42**); **DENIES** the Motion for Transfer (**Doc #: 44**), and **DENIES AS MOOT** the Motion to Strike (**Doc #: 51**).

**IT IS SO ORDERED.**

*/s/ Dan A. Polster    December 16, 2014*
**Dan Aaron Polster**
**United States District Judge**